UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| STEPHANIE FOSTER, et al.,<br><br>                    Plaintiffs,<br><br>      v.<br><br>ALEX KOSSEFF, et al.,<br><br>                    Defendants. | NO:  11-CV-5069-TOR<br><br>ORDER GRANTING DEFENDANT ALEX KOSSEFF'S AND DEFENDANT ADVENTURE SAFETY INTERNATIONAL'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT is a motion for summary judgment filed by Defendants Alex Kosseff and Adventure Safety International (ECF No. 80).  This matter was heard with oral argument on March 22, 2013.  William S. Finger appeared on behalf of the Plaintiffs.  Heather C. Yakely appeared on behalf of Defendants Alex Kosseff and Adventure Safety International.  The Court has reviewed the briefing and the record and files herein, and is fully informed.

///

///

ORDER GRANTING SUMMARY JUDGMENT ~ 1

BACKGROUND

Defendants Alex Kosseff ("Kosseff") and Adventure Safety International LLC ("ASI") have moved for summary judgment on Plaintiffs' negligence claims. Defendants assert that these claims fail as a matter of law because neither Kosseff nor ASI owed Plaintiff Stephanie Foster ("Ms. Foster") a duty of care to identify the dangerous condition which caused her to fall from the Whitman College climbing wall on April 28, 2008.

FACTS

Ms. Foster enrolled as a freshman at Whitman College in the fall of 2007. During the 2007-2008 academic year, Plaintiff enrolled in several rock climbing classes offered through the Whitman College Outdoor Program ("Outdoor Program"). She also accepted a paid position as a student climbing instructor for the Outdoor Program. As a result of this coursework and employment, Plaintiff participated in several climbing sessions on a sport climbing wall located on the Whitman College campus.

On April 28, 2008, Ms. Foster was summoned to the climbing wall by her supervisor, Brien Sheedy ("Sheedy") to assist in removing several climbing ropes that were hanging from the top of the wall. At Sheedy's direction, Ms. Foster ascended the wall, climbed atop a platform adjacent to the wall, and removed all but one of the ropes. Having completed her task, Ms. Foster lowered herself back

onto the climbing wall with the intention of rappelling down the wall using the remaining rope.  Shortly after beginning her descent, however, the remaining rope became unhooked from two "Super Shut" anchors located near the top of the wall. The release of the rope caused Ms. Foster to free fall approximately 35 feet to the ground, resulting in serious permanent injury to her spine.

In April of 2007, one year prior to Ms. Foster's fall, Whitman College hired ASI to perform a "risk management audit" of the Outdoor Program.  The purpose and scope of this audit are central to the outcome of this case.  Unfortunately, the terms of the agreement between Whitman College and ASI were never reduced to writing.  In any event, it is undisputed that the audit was conducted by Defendant Alex Kosseff ("Kosseff") over the course of four days on the Whitman College campus.  It is further undisputed that Whitman College paid $3,000 for the audit.

During the course of the audit, Kosseff met with several students and administrators who were involved with the Outdoor Program.  He also observed several regularly-scheduled activities, including an open climbing wall session, a pool session offered to students in a kayaking class, a climbing wall session offered to students in a rock climbing class, a training session for an upcoming climbing competition, and a debriefing session for a glacier mountaineering course.  ECF No. 153-5 at 7.

1    After completing his site visit, Kosseff prepared and submitted a written

2    report of his findings and recommendations to Whitman College.  The authenticity

3    of this document, which bears the title, "**Draft** Risk Management Audit,"

4    (hereafter "audit report") is undisputed.[1]  The audit report contains several

5    passages which are relevant to the issues raised in the instant motion.  One such

6    passage, under the heading "Audit Process Introduction" reads as follows:

> The ASI Risk Management Audit program is a voluntary program
> aimed at improving risk management practices in outdoor education
> and recreation.  This program has been designed by ASI and the audit
> process is handled by one of our experienced staff members.  We
> recognize that each program is unique and that one standardized risk
> management plan will not work for every organization.  With this in
> mind, the ASI Risk Management audit process does not prescribe
> specific approaches, but rather aims to assess that different aspects
> [of] risk management are being addressed.
>
> ASI's audit program is designed as an accessible step for
> organizations that want to reduce the risk of an accident taking place.
> It gives organizational management, clients/students, and others
> confidence that prudent steps are being taken to manage hazards.  If
> an accident does occur, participation in this voluntary program can
> protect the organization's reputation and serve, if necessary, as part of
> a legal defense.  ASI's audit program focuses exclusively on risk
> management and safety concerns and does not address educational,
> marketing, business and financial management, or other issues.

---

[1] ASI apparently contemplated issuing a final draft after Whitman College had reviewed and implemented its recommendations, but no final draft was ever issued. ECF No. 84-1 at Tr. 35-36.

ORDER GRANTING SUMMARY JUDGMENT ~ 4

ECF No. 153-5 at 5.

In another passage, under the heading "Audit Program Disclaimer," the audit

report states:

> The nature of Adventure Safety International Risk Management Audit is to gain a general understanding of the risk management practices at the time of the review. This is done primarily through review of the self assessment responses supplied by the management of the program being accredited. This is supplemented with onsite observation and interviews, which occur during a brief site visit.
>
> The major aim of this voluntary audit is to benchmark the program against the risk management guidelines that ASI believes will promote good risk management practice. The benchmarks have been established, at three levels, in many (but not all) areas of risk management planning. The intent is to identify and share good practice amongst outdoor programs and over time to raise the level of risk management practice.
>
> The audit cannot provide any guarantee that future operations will be free of safety incidents. Rather the audit documents that at the time of the review risk management practices met or exceeded risk management guidelines established by ASI and based on current industry practices.

ECF No. 153-5 at 6.

Finally, the audit report documents ASI's substantive findings and

recommendations across 27 different program evaluation criteria. These criteria

vary widely, ranging from training and oversight of activity leaders to safety of

passenger vans and drivers. Included among these criteria are ratings for

"Equipment" and "Facilities." ECF No. 153-5 at 30, 35. The audit report assigns

the Outdoor Program the highest rating in both categories, noting that the quality

ORDER GRANTING SUMMARY JUDGMENT ~ 5

1    of the program's equipment was "exceptional," and that those responsible for the

2    program routinely inspect facilities for potential safety hazards.  ECF No. 153-5 at

3    30, 35.

4            Shortly after Ms. Foster's fall on April 28, 2008, Whitman College hired

5    ASI to investigate the cause of the accident.  ASI assigned Kosseff to conduct the

6    investigation.  Kosseff ultimately concluded that the accident occurred as a result

7    of Plaintiff climbing above the Super Shut anchors and subsequently descending

8    below them.  According to Kosseff, the Super Shut anchors were not designed to

9    accommodate a person climbing above them; rather, the anchors were designed for

10   use only at "dead end" locations on a sport climbing wall.  Kosseff further noted

11   that the manufacturer of the anchors had issued warnings against climbing above

12   them, noting that the risk of a climbing rope becoming disengaged from an anchor

13   in this situation was about "50/50."  Thus, Kosseff concluded that both Whitman

14   College and Ms. Foster were negligent in using the Super Shut anchors for a

15   purpose for which they were not designed.

16           In the instant lawsuit, Plaintiffs assign fault to Kosseff for failing to identify

17   the risks posed by the Super Shut anchors during the ASI's risk management audit.

18   Had Kosseff identified these risks and reported them to Whitman College,

19   Plaintiffs assert, the problem could have been corrected before Ms. Foster was

20   injured.  For the reasons discussed below, the Court finds that ASI's duty of care

ORDER GRANTING SUMMARY JUDGMENT ~ 6

1   arising from the risk management audit did not extend to identifying the risk posed

2   by improper use of the Super Shut anchors.

3

4                                   DISCUSSION

5          The Court may grant summary judgment in favor of a moving party who

6   demonstrates "that there is no genuine dispute as to any material fact and that the

7   movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The

8   party moving for summary judgment bears the initial burden of showing the

9   absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S.

10  317, 323 (1986). The burden then shifts to the non-moving party to identify

11  specific genuine issues of material fact which must be decided by a jury. *See*

12  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d

13  202 (1986). "The mere existence of a scintilla of evidence in support of the

14  plaintiff's position will be insufficient; there must be evidence on which the jury

15  could reasonably find for the plaintiff." *Id.* at 252.

16         For purposes of summary judgment, a fact is "material" if it might affect the

17  outcome of the suit under the governing law. *Id.* at 248. A dispute as to any such

18  fact is "genuine" only where the evidence is such that a reasonable jury could find

19  in favor of the non-moving party. *Id.* In ruling on a summary judgment motion, a

20  court must construe the facts, as well as all rational inferences therefrom, in the

ORDER GRANTING SUMMARY JUDGMENT ~ 7

light most favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).  Finally, the court may only consider evidence that would be admissible at trial.  *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002).

**A. Plaintiff Was an Intended Beneficiary of the Risk Management Audit**

In its prior order denying Defendants' motion to dismiss, the Court remarked that, in its view, the viability of Plaintiffs' negligence claim hinged on their ability to establish that Ms. Foster was an intended third-party beneficiary of the contract between ASI and Whitman College.  ECF No. 72 at 10 (citing *Burg v. Shannon & Wilson, Inc.*, 110 Wash. App. 798, 807-08 (2002)).  Specifically, the Court commented that, in order to avoid summary dismissal of this claim, Plaintiff would need to establish, as a threshold matter, that "ASI agreed to undertake the risk management audit for the benefit of the college's *employees and students* rather than for the benefit of the college itself."  ECF No. 72 at 10.

Having reviewed the record on summary judgment, the Court finds that Plaintiffs have established a triable question of fact on this issue.  First, the Draft Risk Management Audit indicates that ASI's audit program is designed to "give[] organizational management, *clients/students, and others* confidence that prudent steps are being taken to manage hazards."  ECF No. 153-5 at 5 (emphasis added).  Second, the Director of the Outdoor Program, Brien Sheedy, testified during his deposition that the risk management audit was designed to minimize risks to "all

users" of the Outdoor Program, including students and employees.  ECF No. 153-10 at 34-35.  Third, Whitman College's chief financial officer, Peter Harvey, testified that the college typically takes an "across the board" approach to risk management by attempting to mitigate risks to students, employees and faculty. ECF No. 153-8 at 25.  Finally, Whitman College's president, George Bridges, testified that he would expect any risk management audit commissioned by the college "to protect the school and the employees and the students."  ECF No. 153-9 at 44.  A rational jury could find from this evidence that Ms. Foster, as an employee and student of Whitman College, was an intended beneficiary of the contract for the risk management audit.

### B. The Danger Posed by Misuse of the Super Shut Anchors Was Beyond the Scope of ASI's Risk Management Audit

There are four elements to a common law negligence claim in Washington: duty, breach, causation and damages.  *Michaels v. CH2M Hill, Inc.*, 171 Wash.2d 587, 605 (2011).  As to the first element, a duty of care is defined as "an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another."  *Affiliated FM Ins. Co. v. LTK Consulting Servs., Inc.*, 170 Wash.2d 442, 449 (2010) (internal quotation and citation omitted).  Whether a duty of care exists is a matter of law to be decided by the court rather than by a jury.  *Osborn v. Mason Cnty.*, 157 Wash.2d 18, 23

ORDER GRANTING SUMMARY JUDGMENT ~ 9

1    (2006).  This is a "threshold question" which involves three separate inquiries:

2    "Does an obligation exist?  What is the measure of care required?  To whom and

3    with respect to what risks is the obligation owed?"  *Affiliated FM Ins. Co.*, 170

4    Wash.2d at 449.  In deciding whether the law imposes a duty of care, a court must

5    balance "considerations of logic, common sense, justice, policy, and precedent."

6    *Id.* at 450 (internal quotations and citations omitted).

7        Here, Defendants contend that they did not owe Ms. Foster a duty of care to

8    discover the danger posed by misuse of the Super Shut anchors.  The Court agrees.

9    In Washington, a private party who inspects another's premises for safety hazards

10   may be liable to third parties for injuries caused by the inspecting party's

11   negligence.  *See Sheridan v. Aetna Cas. & Surety Co.*, 3 Wash.2d 423, 439-40

12   (1940); (liability insurer which inspected cargo elevator for safety hazards liable to

13   third party who was injured as a result of insurer's failure to discover dangerous

14   condition); *Nielson v. Wolfkill Corp.*, 47 Wash. App. 352, 359-60 (1987) (injured

15   worker's cause of action for negligent safety inspection performed by Department

16   of Labor and Industries inspector barred by Washington Industrial Insurance Act);

17   *see also* Restatement (Second) of Torts § 324A(b) (1965) ("One who undertakes,

18   gratuitously or for consideration, to render services to another which he should

19   recognize as necessary for the protection of a third person or his things, is subject

20   to liability to the third person for physical harm resulting from his failure to

ORDER GRANTING SUMMARY JUDGMENT ~ 10

1   exercise reasonable care to protect his undertaking, if he has undertaken to perform

2   a duty owed by the other to the third person.").

3       Nevertheless, the act of inspecting another's premises for safety hazards

4   does not transform the inspecting party into a *de facto* insurer against any and all

5   risks.  Although the Court has not located any cases directly on-point in the State

6   of Washington, courts in other jurisdictions have held that an inspecting party is

7   only liable for undiscovered hazards which he or she undertook to discover in the

8   first place.  *See, e.g., Procter & Gamble Co. v. Staples*, 551 So.2d 949, 955-56

9   (Ala. 1989) ("In defining the nature of the duty undertaken by a voluntary [safety]

10  inspection, two aspects must be considered—the physical scope of the undertaking

11  and the degree of scrutiny and action mandated by conditions observed or

12  reasonably observable.") (quotation and citation omitted); *Winslett v. Twin City*

13  *Fire Ins. Co.*, 232 S.E.2d 638, 639 (Ga. App. 1977) (no liability to third party for

14  failing to discover dangerous condition on construction crane where "evidence was

15  uncontradicted that no detailed inspections of machinery or equipment were

16  contemplated or made"); *Lavazzi v. McDonald's Corp.*, 606 N.E.2d 845, 849-50

17  (Ill. App. 1992) (inspectors hired by restaurant to perform food safety inspections

18  at supplier's plant not liable for negligent inspection where inspectors "did not

19  specifically focus any attention . . . on the piece of equipment involved in the

20  injury").  In other words, the weight of authority from other jurisdictions counsels

ORDER GRANTING SUMMARY JUDGMENT ~ 11

1   that an inspecting party's liability for negligent inspection must be circumscribed

2   by the scope of the inspection actually performed.

3          The Court concludes that "considerations of logic, common sense, justice,

4   policy, and precedent" support adoption of this rule. *See Affiliated FM Ins. Co.*,

5   170 Wash.2d at 450. Contrary to Plaintiffs' assertions, an inspecting party's duty

6   of care is not synonymous with the foreseeability of a particular injury occurring.

7   As Defendants correctly note, this argument improperly collapses the duty of care

8   and causation elements of a negligence claim. In Washington, a negligence

9   plaintiff must make a "threshold showing" that the defendant owed her a duty of

10  care before proceeding to the issues of whether the defendant breached its duty and

11  whether the breach was a foreseeable cause of the plaintiff's injury. *See Munich v.*

12  *Skagit Emergency Commc'n Ctr.*, 175 Wash.2d at 871, 877 (2012). While

13  foreseeability can sometimes inform the *scope* of a duty owed, it cannot create the

14  duty of care in the first instance. *Michaels*, 171 Wash.2d at 608. Indeed, equating

15  duty with foreseeability in the context of a safety inspection would lead to a

16  perverse result: an inspector would be legally obligated to report each and every

17  manner in which a person might conceivably be injured—regardless of how

18  obvious, inherent or attenuated the danger might be. This result would effectively

19  transform safety inspectors into *de facto* insurers against all risks. As a matter of

20  logic and public policy, the better approach is to define an inspector's duty of care

ORDER GRANTING SUMMARY JUDGMENT ~ 12

1    according to the types of hazards that were actually targeted by his or her

2    inspection.

3        Applying this rule to the instant case, the Court finds that the hazard which

4    caused Ms. Foster's fall—misuse of the Super Shut anchors—was simply beyond

5    the scope of the risk management audit that ASI performed.  As a threshold matter,

6    Plaintiffs have failed to establish that ASI undertook to inspect any individual

7    pieces of equipment maintained by the Outdoor Program.  In his deposition,

8    Kosseff testified unequivocally that the Outdoor Program's equipment was beyond

9    the scope of ASI's audit:

10       There were hundreds and hundreds of pieces of equipment within this
         program.  Each of those pieces of equipment, especially the climbing
11       [equipment], have specific ways in which they're used.  There -- I was
         not looking at how this equipment would be utilized in this situation.
12       I was looking at how the college conducted their systems for
         managing risk.
13
     ECF No. 84-1 at Tr. 94.  Similarly, Brien Sheedy states in his declaration that he
14
     "understood and expected that the [audit] would not review specific equipment
15
     utilized in the Outdoor Program, for example the Fixe Super Shut anchors, as that
16
     type of inspection was not envisioned by the audit process based upon the
17
     information [he] learned from [Kosseff]" prior to hiring ASI.  ECF No. 82 at ¶ 6.
18
     Although this testimony is somewhat self-serving, Plaintiffs have not rebutted it.
19
         Moreover, even assuming for the sake of argument that ASI was charged
20
     with inspecting individual pieces of equipment, it could not reasonably have been

ORDER GRANTING SUMMARY JUDGMENT ~ 13

expected to identify hazards stemming from potential *misuse* of the equipment.  As Defendants correctly note, the Super Shut anchors which Ms. Foster was using at the time of the accident did not truly "fail."  Rather, the anchors did something that they were designed to do—*i.e.*, release a climbing rope—when Ms. Foster used them for an unsupported application.

To whatever extent Kosseff understood the danger of the Super Shuts releasing a rope in this scenario, he was not obligated to address it with Whitman College.  ASI did not contract with Whitman College to address dangers caused by misuse of the Outdoor Program's equipment.  While there is no written contract evidencing the scope of work that ASI agreed to perform, the audit report prepared by Kosseff is highly informative.  Having reviewed the audit report in its entirety, the Court finds that the purpose of the risk management audit was to improve Whitman College's safety *practices* rather than to identify and catalog specific safety hazards.  Indeed, there is no evidence that ASI agreed to perform a detailed "safety inspection" of specific outdoor equipment, buildings, vehicles, etc.  Nor is there any evidence that Kosseff actually undertook to perform an inspection at that minute level of detail.

In the final analysis, there is simply no evidence that ASI agreed or undertook to examine the virtually countless ways in which the Outdoor Program's climbing equipment could have been dangerously misused.  Accordingly, Plaintiffs

have not met their burden of establishing that ASI owed Ms. Foster a duty of care

to discover and report the danger posed by misuse of the Super Shut anchors.  In

the absence of a duty of care, Plaintiffs cannot prevail on their negligence claim.

Defendants' motion for summary judgment is granted.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. The motion for summary judgment filed by Defendants Alex Kosseff and

    Adventure Safety International (ECF No. 80) is **GRANTED**.  Plaintiffs'

    claims against these Defendants are **DISMISSED** with prejudice.

2. Plaintiffs' claim against Defendant Fixe Industry, which has never been

    served in this action, is **DISMISSED** without prejudice.

3. All pending motions are **DENIED** as moot.

The District Court Executive is hereby directed to enter this Order and a

judgment accordingly, provide copies to counsel, and **CLOSE** the file.

**DATED** March 22, 2013.

THOMAS O. RICE
United States District Judge

ORDER GRANTING SUMMARY JUDGMENT ~ 15